UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIMEEN CARTER,

    Plaintiff,

-against-

CITY OF NEW YORK; NEW YORK CITY HEALTH & HOSPITAL CORPORATION; DUANE RODRIGUEZ; Correction Officers JOHN and JANE DOES #1-2; Health and Hospitals Corporation employees JOHN and JANE DOES #3-8,

    Defendants.

14 Civ. _____ ( )

ECF CASE

COMPLAINT

JURY TRIAL DEMANDED
JUDGE CAPRONI

14 CV 4236

RECEIVED JUN 12 2014 U.S.D.C. S.D.N.Y.

Plaintiff Elimeen Carter (hereinafter "Mr. Carter"), by his attorneys Manatt, Phelps & Phillips, LLP, for his Complaint alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action under 42 U.S.C. § 1983 and applicable state law filed by Elimeen Carter, an inmate who was savagely beaten while housed at the Bellevue Hospital Prison Ward, a facility jointly controlled by New York City's Department of Correction and Health and Hospitals Corporation. The attack began when a Health and Hospitals Corporation employee entrusted with Mr. Carter's care kicked Mr. Carter in the groin. While Mr. Carter lay helpless on the ground, the employee then repeatedly punched Mr. Carter in the face against a hard floor and then, with full body weight, dropped his knee onto Mr. Carter's face, cracking Mr. Carter's skull. The Health and Hospitals Corporation and Department of Correction employees present at the scene did nothing to help as Mr. Carter's assailant grabbed him by the hair, pulled him into a room, and continued the assault. At no time did any Health and Hospitals Corporation or Department of Correction staff intervene to protect Mr. Carter from his attacker's blows.

2. The attack on Mr. Carter resulted in numerous and severe injuries, including a blowout fracture of the cavity surrounding his left eye. Mr. Carter seeks redress against the City of New York; the Health and Hospitals Corporation; Duane Rodriguez, the individual who attacked him; as well as against the Department of Correction and Health and Hospitals Corporation employees who, despite their constitutional duty to protect Mr. Carter, enabled the attack on him to continue unabated.

## JURISDICTION AND VENUE

3. This action arises under the Eighth and Fourteenth Amendments of the United States Constitution, under 42 U.S.C. §§ 1983 and 1988, and the New York state constitution and common law.

4. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

5. The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

6. Plaintiff demands trial by jury in this action.

## PARTIES

7. Elimeen Carter is a citizen of the United States and a resident of New York. At the time of the events giving rise to this suit, Mr. Carter was in custody at the Bellevue Hospital Prison Ward facility located at 462 First Avenue, New York, New York. All of the events giving rise to the Complaint occurred in New York, New York.

8. Defendant City of New York ("City") is a municipal corporation organized and existing under the laws of the State of New York, which operates a number of detention jails, primarily through its Department of Correction ("DOC" or "Department"). The City operates a

prison ward inside of Bellevue Hospital for inmates requiring medical and psychiatric care, which is jointly administered by the DOC and the New York City Health and Hospitals Corporation. DOC, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to the use, reporting and investigation of force by staff, and access to medical and other program services mandated by local law and court orders. The Department is responsible for the appointment, training, supervision and conduct of DOC personnel, including the DOC defendants herein.

9. Defendant New York City Health and Hospitals Corporation ("HHC") is a municipal public benefit corporation which, along with DOC, operates the Bellevue Hospital Prison Ward facility. HHC, through its senior officials and its officials at Bellevue Hospital Prison Ward, promulgates and implements policies, including with respect to the use, reporting and investigation of force by its staff, and access to medical and other program services mandated by local law and court orders. HHC is responsible for the appointment, training, supervision and conduct of HHC personnel, including the HHC defendants herein.

10. Defendant Duane Rodriguez ("Rodriguez") is a Psychiatric Social Health Technician ("PSH Technician") at the Bellevue Hospital Prison Ward. On information and belief, at the time of the attack Mr. Rodriguez was employed by HHC, and acted within the scope of his employment as such.

11. Defendants Correction Officers John and Jane Does #1 and 2 (the "DOC Doe Defendants"), whose actual names plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, and who are sued herein by the fictitious designations "John Doe" and "Jane Doe," were, on information and belief, uniformed correction staff employed by DOC, acting in the capacity of agents, servants, and employees of defendant City, and within the scope

of their employment as such.

12. Defendants HHC employees John and Jane Does #3 through 8 (the "HHC Doe Defendants"), whose actual names plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, and who are sued herein by the fictitious designations "John Doe" and "Jane Doe," were, on information and belief, medical staff employed by HHC, and acted within the scope of their employment as such.

## FACTUAL ALLEGATIONS

**The Events Preceding the Assault on Elimeen Carter**

13. On or about February 4, 2014, Elimeen Carter was relocated from the detention facility at Rikers Island, where he was awaiting trial, to Bellevue Hospital Prison Ward, in order to receive treatment for mental illness. Defendant Rodriguez was one of the PSH Technicians responsible for Mr. Carter's care at Bellevue.

14. On information and belief, defendant Rodriguez was and is actively involved in the sport of underground amateur boxing and fighting, and has undergone training in inflicting maximum injury with his fists and legs. On information and belief, Defendants were aware of Rodriguez's interests in violence, but took no measures to limit Rodriguez's access to Mr. Carter or the other patients in their care and custody.

15. About one week into Mr. Carter's stay at Bellevue, he would be involved in two separate physical confrontations with Rodriguez. Despite the first incident, Defendants took no steps to limit Rodriguez's access to Carter, directly resulting, one day later, in Rodriguez again attacking Carter and causing serious and traumatic injuries.

16. The first encounter occurred on February 11, 2014. On that day, Rodriguez had a physical encounter with Mr. Carter in which Rodriguez used force different from, and in excess of, the force that may have been required to restrain Mr. Carter. On information and belief, the

DOC and HHC Doe Defendants were aware of this February 11 encounter between defendant Rodriguez and Mr. Carter, but did not limit Rodriguez's access to Mr. Carter in any way.

17. On information and belief, defendants City and HHC have a policy and/or practice that even after a physical encounter with an inmate, HHC employees are freely allowed to be in contact with such inmates on a one-on-one basis, despite the obvious risk to an inmate's health and safety.

**Rodriguez Repeatedly Assaults Mr. Carter and HHC and DOC Staff Fail to Restrain Him**

18. On the morning of the day of the assault, February 12, 2014, defendant Rodriguez was assigned to supervise Mr. Carter on a one-on-one basis. As discussed below, this assignment had disastrous consequences for Mr. Carter.

19. On or about 7:45 AM, defendant Rodriguez began engaging in a verbal argument with Mr. Carter in the hallway in front of Mr. Carter's room.

20. As Mr. Carter retreated slowly away from defendant Rodriguez in an attempt to end the argument, Rodriguez lunged at Mr. Carter, kicking him in the groin area with heavy work boots, knocking Mr. Carter to the floor.

21. This attack was unprovoked and unjustified, and Rodriguez quickly escalated his assault into an unrestrained beating of Mr. Carter.

22. Defendant Rodriguez punched Mr. Carter in the face multiple times and slammed Mr. Carter's head against the prison ward hallway's hard floor.

23. With Mr. Carter incapacitated as a result of these blows, defendant Rodriguez stood up and dropped his knee directly onto the left side of Mr. Carter's face, thrusting the full force of his weight onto Mr. Carter's left eye socket and fracturing Mr. Carter's orbital cavity in the crushing force between Rodriguez's knee and the prison ward hallway's hard floor.

24. Part of Defendant Rodriguez's beating of Mr. Carter was witnessed by another PSH Technician, an HHC Doe Defendant, who, on information and belief, was in the vicinity supervising another patient on a one-on-one basis. This HHC Doe Defendant failed to intervene to stop defendant Rodriguez's violent attack on Mr. Carter.

25. Eventually, two Bellevue Hospital Prison Ward staffers, both HHC Doe Defendants, arrived, cleared a room of patients, and began to move Mr. Carter into the room.

26. These HHC Doe Defendants made no effort to remove defendant Rodriguez from the immediate vicinity, instead allowing him to grab Mr. Carter by the hair and drag him as they held Mr. Carter's hands and legs to move him into the room.

27. Mr. Carter, bloodied, was left on the floor in the room with Rodriguez and an HHC Doe Defendant. There, Rodriguez continued his attack on Mr. Carter.

28. By that time, numerous staffers, including several of the HHC Doe Defendants and the DOC Doe Defendants, were congregated inside or immediately outside of the room in which Mr. Carter was being beaten, but none took any action to stop the beating or remove defendant Rodriguez.

29. Defendant Rodriguez eventually left the room on his own accord and, on information and belief, paced the hallway in a menacing manner.

30. On information and belief, the entire attack on Mr. Carter was recorded by two cameras in the Bellevue Hospital Prison Ward facility, and this recording remains in the possession of defendants City and HHC. Despite repeated requests by Mr. Carter's counsel, a copy of this video recording of his assault has not been provided to Mr. Carter or his counsel.

31. Mr. Carter did not assault or attempt to assault any officer or staff member, nor did he present a threat to the personal safety of any staffer at the Bellevue Hospital Prison Ward

so as to require the use of force.

32. Rodriguez acted sadistically and maliciously and demonstrated deliberate indifference toward Mr. Carter's rights and his physical well-being.

33. The DOC Doe Defendants and the HHC Doe Defendants demonstrated deliberate indifference toward Mr. Carter's rights and his physical well-being by refusing to intervene to stop defendant Rodriguez's beating of Mr. Carter.

**Defendants Cover Up the Assault, Leading to a Deprivation of Necessary Medical Care**

34. After defendant Rodriguez's attack on Mr. Carter had concluded, Mr. Carter was transported to the medical treatment section of Bellevue Hospital, where he was diagnosed with a blowout orbital fracture and multiple nasal fractures.

35. On information and belief, immediately following the assault, some or all of the defendants falsely communicated internally and to their supervisors that Mr. Carter attacked defendant Rodriguez, when the reverse was true.

36. On information and belief, medical staff treating Mr. Carter after the assault were also falsely informed by the defendants that Mr. Carter had attacked defendant Rodriguez, and not vice versa.

37. On information and belief, these defendants knew this accusation to be false as a result of, *inter alia*, observing the attack, observing that Mr. Carter did not strike back at Rodriguez, observing defendant Rodriguez's behavior following the attack, and seeing that Mr. Carter was bloodied and badly bruised, while defendant Rodriguez was not injured.

38. As a direct and foreseeable consequence of those false statements, Mr. Carter was unnecessarily administered a sedative and was deprived of psychiatric care to treat the trauma arising out of the assault.

39. Indeed, Mr. Carter's emotional trauma was exacerbated by the medical staff who, relying on false reports from defendants, treated Mr. Carter as an aggressor, and not a victim of unprovoked violence.

40. As a result of the assault and its aftermath, Mr. Carter suffered, and continues to suffer from severe emotional and physical injuries, including multiple facial fractures, abdominal pain and bruising, and emotional trauma.

**The City's Institutionalized Abuse of the Mentally Ill**

41. The assault on Mr. Carter was a result of the City's, DOC's and HHC's pattern and practice of deliberate indifference toward the safety of mentally ill inmates. Indeed, abuse and violence against mentally ill inmates is endemic in city jails, facilitated by a culture in which correction officers do little to stop abuses being committed by their peers.

42. Officials exercising supervisory care over mentally ill inmates in city jails, whether as employees of DOC or HHC, receive inadequate training in the supervision of mentally ill inmates.

43. Indeed, defendants City and HHC have permitted a pattern and practice of staff failing to intervene to protect mentally ill inmates against abuse by staff members.

44. On May 17, 2007, for example, as alleged in a federal civil complaint, a mentally ill inmate in custody at Bellevue Hospital Prison Ward, Patrick Miller, was beaten to death by DOC staff. Several DOC employees witnessed the assault—which caused such massive trauma to Mr. Miller's head, neck, and heart that he died within an hour of the brutal attack—but failed to intervene. *Miller v. City of New York*, Civ. No. 1:08-cv-04577-KBF at Dkt. 1 (S.D.N.Y. May 15, 2008).

45. On August 18, 2012, as alleged in a federal criminal complaint, an inmate in

custody at Rikers Island, Jason Echevarria, died after screaming for medical assistance for hours. Correction officers at Rikers informed the officer in charge of the inmate's severe medical distress, only to be told not to raise the issue again unless "there was a dead body." *U.S. v. Pendergrass*, 14-mag-583 at Dkt. 1 (S.D.N.Y. Mar. 21, 2014).

46. In September of 2013, as reported by numerous media sources, Bradley Ballard, a mentally ill inmate at Rikers Island died after he was locked up continuously for seven days in a cell that lacked running water. According to media sources, Mr. Ballard was deprived of needed treatment and medication and left to die in his cell after he developed sepsis.

47. Similarly, on April 3, 2014, as reported by numerous media sources, a mentally ill former United States Marine in custody at Rikers Island named Jerome Murdough died as a result of overheating in his cell. Mr. Murdough's cell was supposed to be monitored by a correction officer, but no such monitoring took place; instead Mr. Murdough was left to bake to death.

48. The DOC acknowledged that this last incident was not isolated, admitting that it demonstrated "systemic management problems." "Warden at Rikers Island Demoted After Inmate Dies in Overheated Cell," THE NEW YORK TIMES, Apr. 4, 2014, at A20.

49. New York City Mayor Bill De Blasio has also acknowledged that, with respect to proper care for mentally ill inmates, New York City's jails have "sadly lagged behind other corrections systems." "U.S. Accuses Rikers Officer of Ignoring Dying Plea," THE NEW YORK TIMES, Mar. 25, 2014, at A1.

50. Norman Seabrook, the head of the Correction Officers' Benevolent Association, a union representing many DOC officers, has stated publicly that DOC officers receive insufficient training with respect to the supervision of mentally ill inmates. "Warden at Rikers Island

Demoted After Inmate Dies in Overheated Cell," *supra* at ¶ 47.

51.     In the cases of Mr. Miller, Mr. Echevarria, Mr. Ballard and Mr. Murdough, on information and belief, the deaths of mentally ill inmates was a direct result of DOC officers' failing to stop abuses in progress, refusing to save the lives of inmates in obvious need of immediate medical care, and failing to monitor obvious dangers to inmate safety.

52.     In the case of Mr. Carter, the DOC Doe Defendants and HHC Doe Defendants were nearby or present while defendant Rodriguez beat Mr. Carter, but failed to intervene to protect the health and safety of Mr. Carter, who was obviously and desperately in need of help.

53.     Mr. Carter filed a written notice of claim with the City Comptroller's Office at 1 Centre Street, New York, New York on or about March 18, 2014.

54.     Mr. Carter filed a written notice of claim with HHC's Office of Legal Affairs Claims Division at 125 Worth Street, #257, New York, New York on or about March 18, 2014.

55.     More than 30 days have elapsed since the filing of the notices of claim, and the City and HHC have not settled the action.

56.     This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 / Eighth and Fourteenth Amendments**
**(Against Rodriguez, DOC Doe Defendants and HHC Doe Defendants)**

57.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

58.     By reason of the foregoing, and by assaulting, beating, and using gratuitous, excessive, sadistic, and unconscionable force against Mr. Carter, resulting in severe injury and by demonstrating deliberate indifference towards such actions and failing to prevent defendant Rodriguez from using such force, Rodriguez, the DOC Doe Defendants and the HHC Doe

Defendants deprived Mr. Carter of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution to be free from gratuitous and excessive force, and from cruel and unusual punishment. These defendants' conduct manifested deliberate indifference to Mr. Carter's constitutional rights.

59. Upon information and belief, defendants conspired among themselves to deprive Mr. Carter of his constitutional rights secured by 42 U.S.C. § 1983, and by the Eighth and Fourteenth Amendments of the United States Constitution, and took numerous overt steps in furtherance of such conspiracy.

60. Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as DOC and HHC employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Carter of his constitutional rights secured by 42 U.S.C. § 1983, and by the Eighth and Fourteenth Amendments of the United States Constitution.

61. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Carter sustained the damages alleged above.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 / Eighth Amendment
### (Against Rodriguez, DOC Doe Defendants and HHC Doe Defendants)

62. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

63. As a result of having been the victim of a violent and unprovoked assault and having been previously diagnosed with mental illness, Mr. Carter had a serious medical need of immediate psychiatric treatment to address his emotional and psychological trauma.

64.     By reason of the foregoing, the DOC Doe Defendants and the HHC Doe Defendants caused Mr. Carter to be deprived of appropriate and necessary treatment for the emotional and psychological trauma Mr. Carter suffered as a result of the attack, through actions including, without limitation, falsely communicating that Mr. Carter engaged in an assault of defendant Rodriguez and deceiving Mr. Carter's treating staff into believing that Mr. Carter was the aggressor in the attack.

65.     By their actions, DOC Doe Defendants and HHC Doe Defendants deprived Mr. Carter of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Eighth Amendment of the United States Constitution to receive adequate medical care and not have serious medical needs ignored.  These defendants' conduct manifested deliberate indifference to Mr. Carter's constitutional rights.

66.     Defendants witnessed the assault on Mr. Carter and its aftermath and therefore knew that a serious medical need existed for such care, but obstructed the provision of that care and subjected Mr. Carter to improper and inadequate psychiatric treatment by falsely representing that Mr. Carter initiated the assault, and was not its victim.

67.     Upon information and belief, defendants conspired among themselves to deprive Mr. Carter of his constitutional rights secured by 42 U.S.C. § 1983, and by the Eighth Amendment of the United States Constitution, and took numerous overt steps in furtherance of such conspiracy.

68.     Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as DOC and HHC employees.  Said acts by defendants were beyond the scope of their jurisdiction, without

authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Carter of his constitutional rights secured by 42 U.S.C. § 1983, and by the Eighth and Fourteenth Amendments of the United States Constitution.

69.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Carter sustained the damages alleged above.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 / Eighth and Fourteenth Amendments
### (Against Defendants HHC and City)

70.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

71.   As joint operators of the Bellevue Hospital Prison Ward, defendants HHC and City (through DOC) share responsibility for the customs, policies, patterns and practices in place regarding the operation of that facility.

72.   On information and belief, at all relevant times, Defendants HHC and City, acting under pretense and color of law, adopted, permitted, tolerated or were deliberately indifferent to customs, policies, patterns or practices that include:

   a. a custom, policy, pattern and practice whereby HHC and DOC do not properly supervise their employees, including without limitation by engaging in a policy or practice whereby HHC staff members who have previously engaged in physical altercations with an inmate are allowed to exercise one-on-one supervision over said inmate;

   b. a custom, policy, pattern and practice whereby HHC and DOC employees tolerate abuse of mentally ill inmates and refuse to intervene on behalf of said inmates when they are being abused by fellow staff members;

   c. a custom, policy, pattern and practice whereby HHC and DOC enable their

employees to make false statements against inmates with the intent of concealing incidents of inmate abuse; and

    d. a custom, policy, pattern and practice whereby HHC and DOC do not properly train employees in the appropriate use of force and restraint of mentally ill patients, or discipline them for using excessive force.

73. Each of the behaviors above constitutes a municipal policy, practice, or custom and led to Mr. Carter's assault.

74. By permitting, tolerating and sanctioning persistent and widespread policies, practices and customs pursuant to which Mr. Carter was subjected to a beating that no HHC or DOC staff acted to stop once in progress, defendants HHC and City deprived Mr. Carter of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Eighth and Fourteenth Amendments to be free from gratuitous and excessive force and cruel and unusual punishment.

75. As a direct and proximate result of the policies, practices and customs detailed above, Mr. Carter sustained the damages alleged above.

### FOURTH CLAIM FOR RELIEF
**Assault and Battery**
**(Against Rodriguez and Defendant HHC)**

76. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

77. In physically assaulting Mr. Carter, defendant Rodriguez acted in his capacity as an HHC employee and within the scope of his employment, and committed a willful, unlawful, unwarranted, and intentional assault and battery upon Mr. Carter.

78. The assault and battery by Rodriguez was unnecessary and unwarranted in the

performance of his duties as an HHC employee and constituted and unreasonable and excessive use of force.

79. Defendant HHC, by its officers, agents, servants, and employees, was responsible for Mr. Carter's assault and battery. Defendant HHC, as employer of Rodriguez, is responsible for his wrongdoing under the doctrine of *respondeat superior*.

80. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Carter sustained the damages alleged above.

### FIFTH CLAIM FOR RELIEF
### New York State Constitution, Art. I, § 5 and Art. I, §12
### (Against All Defendants)

81. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

82. By reason of the foregoing, and by using excessive force against Mr. Carter and failing to prevent the use of excessive force against Mr. Carter, defendants deprived him of rights, remedies, privileges and immunities, including the right to be free from cruel and unusual punishment, guaranteed to every New Yorker by Article I, § 5 and 12 of the New York Constitution.

83. Upon information and belief, defendants conspired among themselves to deprive Mr. Carter of his constitutional rights secured by Article I, § 5 and § 12 of the New York Constitution and took numerous overt steps in furtherance of such conspiracy.

84. Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as DOC and HHC employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Carter of his constitutional rights secured by Article I,

§ 5 and § 12 of the New York Constitution.

85. Defendant City, by its officers, agents, servants and employees, was responsible for the deprivation of Mr. Carter's state constitutional rights. Defendant City, as employer of the DOC Doe Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

86. Defendants HHC, by its officers, agents, servants and employees, was responsible for the deprivation of Mr. Carter's state constitutional rights. Defendant HHC, as employer of the HHC Doe Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

87. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Carter sustained the damages alleged above.

**SIXTH CLAIM FOR RELIEF**
Negligence
(Against All Defendants)

88. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

89. Defendant Rodriguez owed a duty of care to Mr. Carter to refrain from conducting himself as to create an unreasonable risk of harm to Mr. Carter. Defendants HHC, City, and their respective Doe employees owed a duty of care to Mr. Carter, as a person under their custody and control, to control the conduct of third persons like Rodriguez in order to prevent them from intentionally harming Mr. Carter.

90. Defendants breached that duty of care, including, without limitation, by assaulting, beating and using gratuitous, excessive, sadistic and unconscionable force against Mr. Carter, resulting in severe injury, and failing to prevent or restrain Rodriguez from doing the same.

91.     Defendants further breached that duty of care, including, without limitation, by causing Mr. Carter to be deprived of necessary treatment for emotional and psychological trauma and exacerbating that trauma by engaging in actions including, without limitation, falsely and knowingly communicating that Mr. Carter engaged in an assault of defendant Rodriguez.

92.     As a direct and proximate result of this unlawful conduct, Mr. Carter sustained the damages alleged above.

93.     All of the foregoing occurred without any fault or provocation on the part of the Mr. Carter.

94.     Defendants City and HHC, by their officers, agents, servants, and employees, were jointly responsible for Mr. Carter's custody and care during the relevant time period.

95.     Defendant City, as employer of the DOC Doe Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

96.     Defendant HHC, as employer of the HHC Doe Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

### SEVENTH CLAIM FOR RELIEF
**Negligent Hiring, Training, Supervision, Discipline and Retention of Services
(Against Defendants HHC and City)**

97.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

98.     As joint operators of the Bellevue Hospital Prison Ward, defendants HHC and City (through DOC) share responsibility for hiring, training, supervising, disciplining and retaining the employment services of individuals employed at that facility.

99.     Defendants HHC and City owed a duty to Mr. Carter to exercise due care, including, without limitation, by selecting and retaining competent personnel to treat, supervise and protect Mr. Carter and training, supervising, and disciplining those employees.

100. Upon information and belief, defendants HHC and City breached that duty of care, including but not limited to in the following ways:

   a) by failing to properly screen defendant Rodriguez and then negligently hiring and retaining him in a position that presented a foreseeable risk of harm to Mr. Carter, where Rodriguez was unfit and incompetent for his position, and had a known or reasonably knowable history and propensity for dangerous and violent conduct—the exact behavior that subsequently caused Mr. Carter's injuries;

   b) by failing to train, supervise and discipline Rodriguez in his duties as a PSH Technician, including without limitation by failing to train and supervise Rodriguez in the appropriate use of force and restraint of mentally ill patients, and to discipline him for using excessive force, where Rodriguez had a known or reasonably knowable history and propensity for dangerous and violent conduct; and

   c) by failing to train, supervise and discipline the DOC Doe Defendants and the HHC Doe Defendants in their duty to intervene on behalf of a mentally ill inmate when that inmate was being abused by staff and to facilitate the provision of appropriate psychiatric care to victims of abuse by providing true and accurate information regarding this abuse, where DOC Doe Defendants and HHC Doe Defendants had a known or reasonably knowable history of displaying deliberate indifference towards incidents of staff-on-inmate violence.

101. Upon information and belief, Mr. Carter's injuries would not have occurred but

for defendants' HHC and City failure to take reasonable care in making decisions regarding (a) defendant Rodriguez's hiring, training, supervision, discipline and retention; and (b) HHC and DOC Doe Defendants' training, supervision and discipline.

102. Upon information and belief, defendants HHC's and City's negligence in hiring, training, disciplining, supervising and retaining defendant Rodriguez, and their negligence in training, supervising and disciplining the HHC Doe Defendants and the DOC Doe Defendants proximately caused Mr. Carter's injuries.

WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

(A) an order awarding compensatory damages in an amount to be determined at trial;

(B) an order awarding punitive damages in an amount to be determined at trial;

(C) reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

(D) directing such other and further relief as the Court may deem just and proper,

together with attorneys' fees, interest, costs and disbursements of this action.

Dated: New York, New York.
June 12, 2014

Respectfully submitted,

By: *[signature]*

Kimo S. Peluso
Nirav S. Shah
Claudia De Palma
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, NY  10036
(212) 790-4500
*Attorneys for Plaintiff Elimeen Carter*