WRITER'S DIRECT DIAL NO.
**(212) 849-7140**

WRITER'S INTERNET ADDRESS
**marcgreenwald@quinnemanuel.com**

April 29, 2016

Honorable Valerie Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:     *Carter v. City of New York*, 14 Civ. 04236 (VEC)

Dear Judge Caproni:

We are *pro bono* counsel to Dwain Rodrigues and we write respectfully pursuant to this Court's April 15, 2016 order, requiring the parties in *Carter v. City of New York* to respond to Mr. Hattem's request to unseal certain video footage (the "Tapes" or "Videos") taken from surveillance cameras at Bellevue Hospital Prison Ward. We also represent Dwain Rodrigues *pro bono* in *People v. Rodrigues*, a related criminal case in New York State Supreme Court. Mr. Rodrigues requests that the Court keep the Videos under seal at this time.

I.     **BACKGROUND**

The Tapes in question show some of the interactions between Mr. Rodrigues and Mr. Carter on February 11 and 12, 2014. They were produced by the City of New York (the "City") in discovery in *Carter v. City of New York*. *See* Dkt. 14 (order compelling production of Videos). Plaintiff Elimeen Carter submitted the tapes to this Court in opposition to the City's motion to bifurcate discovery between *Monell* claims against the City and claims against the individual defendant, Dwain Rodrigues. *See* Dkt. 30 (Plaintiff requesting leave to file Videos under seal with Court) *and* Dkt. 34 (Court permitting Plaintiff to file Videos under seal). The parties in *Carter v. City of New York* have reached an agreement to settle, in principle, but that has been held up by guardianship proceedings in New Jersey. *See* Dkt. 120 (bi-monthly update from Corporation Counsel to Judge Caproni).

In March 2016, the Justice Center for the Protection of People with Special Needs ("Justice Center") secured an indictment against Mr. Rodrigues on the same underlying facts. Mr. Rodrigues voluntarily surrendered on March 23, 2016, pleaded not guilty before Justice

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

James Burke of the New York Supreme Court, and was released on his own recognizance that morning. A few hours later, the Justice Center issued a press release, trumpeting their involvement in the prosecution.[1] That evening, *The Daily News* published a story about the case, quoting liberally from the Justice Center's press release.

On April 13, 2016, Mr. Rodrigues submitted an omnibus motion in his criminal case, petitioning Justice Burke to, among other things, exclude the Tapes from evidence on the grounds that the footage is incomplete, misleading, and unduly prejudicial. There is precedent in New York State courts, as in federal courts, for excluding incomplete and excerpted video footage from evidence at trial. *See People v. Curcio*, 645 N.Y.S.2d 750, 752 (St. Lawrence Cnty. Sup. Ct. 1996) (explaining that the Court of Appeals reversed a conviction in *People v. Ely*, 68 N.Y.2d 520 (1986), because the "admitted tape was shown to be incomplete, containing only portions of the conversation"); *see also United States v. Yevakpor*, 419 F. Supp. 2d 242, 247 (N.D.N.Y. 2006) (excluding video evidence because the government had preserved only small excerpts, not the complete tape). Justice Burke has not yet ruled on Mr. Rodrigues's motion to exclude the Tapes from evidence. The parties are due back in court on May 25, 2016. The case is proceeding to a jury trial.

## II. <u>ARGUMENT</u>

### A. **The Tapes Are Not Subject to any Strong Presumption of Public Access.**

This Court ordered the production of the Videos subject to a protective order. *See* Dkt. 16. In the Second Circuit there is "a strong presumption against modification of a protective order." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, No. 05 Civ. 2745 JGK RLE, 2010 WL 779314, at *3 (S.D.N.Y. Mar. 2, 2010), *aff'd*, 415 F. App'x 286 (2d Cir. 2011). Mr. Hattem has identified no material changes in circumstance that would warrant publishing the Tapes at this time.

Moreover, the presumption of access to which Mr. Hattem refers, and which this Court has recognized, *see* Dkt. 34, "varies with [a document's] relevance to the parties' *substantive* rights." *Int'l Equity Invs., Inc.*, 2010 WL 779314, at *4 (emphasis added). The Tapes were submitted to this Court merely to resolve a question about bifurcating discovery on *Monell* claims against the City versus individual claims against Mr. Rodrigues. They were used, in this Court's own words, for "a matter of Court administration and *not . . . a substantive legal dispute*." Dkt. 34 (emphasis added). Therefore, the presumption of access is weak. *See, e.g. United States v. Smith*, 985 F. Supp. 2d 506, 519-20 (S.D.N.Y. 2013) (collecting caselaw holding that "even discovery materials filed with the court *in connection with discovery-related disputes* are not covered by the qualified right of access") (emphasis added); *cf. United States v. Silver*,

---

[1]  Press Release, Justice Center for the Protection of People with Special Needs, Bellevue Employee Indicted on Charges He Strangled and Attempted to Assault Patient: Case investigated by NYC Department of Investigation and being prosecuted by the Justice Center (Mar. 23, 2016), available at https://www.justicecenter.ny.gov/sites/default/files/documents/03-23-2016-Rodrigues-Bellevue-OMH.final_.pdf

No. 15-CR-93 (VEC), 2016 WL 1572993, at *4 (S.D.N.Y. Apr. 14, 2016) (allowing release of redacted documents that were used in an "essential function of the Court").

**B.      Mr. Rodrigues's Right to a Fair Trial Would Be Jeopardized by Prematurely Unsealing the Tapes.**

Contrary to this weak presumption of public access, the countervailing due process considerations for Mr. Rodrigues are strong.  Releasing the Videos now would prejudice Mr. Rodrigues in his criminal trial.  The print news media have already shown an interest in his case; adding the Tapes to the fire would only further jeopardize Mr. Rodrigues's Sixth Amendment right to a fair trial by prejudicing the local populace and tainting the jury pool.  *See United States v. Silver*, No. 15-CR-93 (VEC), 2016 WL 1572993, at *2 (S.D.N.Y. Apr. 14, 2016) (prohibiting disclosure of sealed documents in advance of trial "given concerns about the Defendant's fair trial rights"); *and In re NBC Universal, Inc.*, 426 F. Supp. 2d 49, 57-58 (E.D.N.Y. 2006) (barring release of tapes that had already been described in print media because video recordings "indubitably [have] a much greater potential impact on jurors than print media").

Mr. Rodrigues has moved to exclude the Tapes from evidence because they are incomplete and misleading: they have been excerpted from the full days' surveillance records, and so fail to reflect relevant earlier interactions; and they do not record any sound, thereby omitting all the words spoken between Mr. Rodrigues and Mr. Carter.  *See United States v. Yevakpor*, 419 F. Supp. 2d 242, 247 (N.D.N.Y. 2006) (excluding video evidence because the government had preserved only small excerpts, not the complete tape); *see also id.* at 250-252 (excluding proffered video at trial because "There is no audio to the video.  The actions are subject to interpretation.").  The unassessed "reliability" of the information is one reason to maintain documents under seal.  *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("*Amodeo II*") ("The court should consider the reliability of the information.  Raw, unverified information should not be as readily disclosed as matters that are verified.").

Mr. Rodrigues's motion to exclude is presently pending before Justice Burke.  Releasing the Tapes in advance of trial would risk tainting the jury pool and would deprive Mr. Rodrigues of any practical right to argue for their exclusion before the judge in his criminal case.  *See In re NBC Universal, Inc.*, 426 F. Supp. 2d 49, 57 (E.D.N.Y. 2006) (barring release of videos until after trial because their publication or broadcast at any earlier time "would substantially hinder defendant's right to a fair trial").

**C.      The Tapes Should Remain Sealed in the Public Interest.**

As this Court has previously recognized, the public release of the Videos would implicate "the privacy concerns of non-parties who may be identified in the video[.]"  Dkt. 34.  "The privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation."  *Amodeo II*, 71 F.3d at 1050; *see also United States v. Silver*, No. 15-CR-93 (VEC), 2016 WL 1572993, at *6 (S.D.N.Y. Apr. 14, 2016) ("Compelling interests" that may overcome First Amendment and common law presumptions of access include "privacy interests of the defendant, victims or other persons").  Both the First Amendment and common law

presumptions of access are guided by the subject matter under seal: if the "subject matter is traditionally considered private rather than public" then public access should be denied. *Amodeo II*, 71 F.3d at 1050. Medical information is a well-established category that warrants judicial sealing. *See id.*

Although Mr. Hattem correctly observes that "the names of all *parties involved* in the incidents" are already a matter of public record, the names of all persons *seen in the videos* are not a matter of public record. Dkt. 121 (emphasis added). The Videos show the interior of a prison ward at a mental hospital. The release of these Tapes would risk involuntarily exposing the identities of persons who suffer from mental disorders and who were found incompetent to stand criminal trial. Circumstances like these weigh heavily against unsealing confidential documents, even when they have been used in the judicial process. *See Amodeo II*, 71 F.3d at 1051.

Mr. Hattem suggests this problem can be solved by redacting the Videos to prevent identification of non-parties; there are, however, dozens of persons besides Mr. Carter and Mr. Rodrigues seen on the Tapes: some of them are inmates, some of them are staff. Heavy redaction to protect the identities of patients and personnel would render the Videos "unintelligible" and "more likely to mislead than inform the public." *Amodeo II*, 71 F.3d at 1052 (barring release of a judicial document because proposed redactions would be too extensive). The Tapes have been excerpted out of context and were recorded without sound; further distorting them by redaction would reduce what is already confusing and prejudicial footage to an incoherent hodgepodge. Releasing the Tapes in this manner would be more likely to harm the public interest in judicial accountability than to advance it.

## III.     <u>CONCLUSION</u>

For these reasons, we respectfully urge the Court to maintain the seal it placed on the Videos in this case. We additionally note that we have conferred with the City defendants, and they respectfully join in our opposition for the same reasons expressed herein.


Respectfully,

/s/ *Marc Greenwald*

Marc Greenwald


Cc: All Counsel of Record (by ECF)
    Benjamin Hattem (by e-mail)