UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
ELIMEEN CARTER,                                :
                                               :
                                               :
                              Plaintiff,       :      14-CV-4236 (VEC)
                                               :
            -against-                          :      OPINION AND ORDER
                                               :
CITY OF NEW YORK, NEW YORK CITY HEALTH         :
& HOSPITAL CORP., ALFONSO BISONO, GERARD       :
ARCHER, BOYCE CARTER, ALEXIS SANCHEZ and       :
DWAIN RODRIGUES,                               :
                                               :
                                               :
                              Defendants.      :
-------------------------------------------------------------------- X
DWAIN RODRIGUES,                               :
                                               :
                                               :
                              Counter Claimant, :
                                               :
            -against-                          :
                                               :
ELIMEEN CARTER,                                :
                                               :
                                               :
                              Counter Defendant. :
-------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  6/9/2016

VALERIE CAPRONI, United States District Judge:

This is a section 1983 case in which Plaintiff alleges two incidents of excessive force while in custody at Bellevue Hospital Prison Ward to receive treatment for mental illness. On April 13, 2016, the Court received an email from Ben Hattem, a reporter for BuzzFeed News, requesting that the Court unseal video recordings of the two incidents as a matter of public interest. This Court ordered the parties to respond to Mr. Hattem's request. *See* April 15, 2016 Endorsed Email from Ben Hattem (Dkt. 121) (hereinafter "Request to Unseal"). Counsel for Plaintiff requested that the Court wait to adjudicate the unsealing request until Plaintiff's

guardianship proceedings had concluded in New Jersey. Pl.'s Apr. 29, 2016 Letter (Dkt. 122) (hereinafter "Pl. Resp."). Counsel for Defendant Rodrigues, joined by the Defendants City of New York and New York City Health and Hospitals Corporation (collectively, "City Defendants"), moved to continue the sealing. Def. Rodrigues' Apr. 29, 2016 Letter Motion to Continue Sealing Order (Dkt. 123) (hereinafter "Mot. to Continue Sealing"). For the reasons set forth below, Mr. Hattem's Request to Unseal is DENIED and Defendant Rodrigues' Motion to Continue the Sealing Order is GRANTED.

## BACKGROUND

Plaintiff initiated this action in June 2014 pursuant to 42 U.S.C. § 1983 alleging two incidents of excessive force that occurred on February 11 and 12, 2014, while he was in custody at Bellevue Hospital Prison Ward to receive treatment for mental illness. Shortly after this case was initiated, the Court ordered the City Defendants to produce to Plaintiff's counsel a copy of the video footage of the two incidents. *See* July 21, 2014 Order (Dkt. 16).

Plaintiff subsequently sought to submit copies of the video footage to this Court as part of his opposition to the City Defendants' motion to bifurcate discovery between *Monell* claims against the City and claims against the individual defendant, Dwain Rodrigues. *See* Pl.'s Aug. 11, 2014 Letter Mot. for Leave to File Under Seal (Dkt. 30). Plaintiff argued that the video footage supported their opposition because it "show[ed] the strength of [Plaintiff's] case against the individual defendants" and "raise[d] serious questions about how the [City Defendants] train employees on use of force and . . . the duty to intervene on behalf of inmates, and illustrate[d] the culture of tolerance among [City Defendant] employees toward inmate abuse." Pl.'s Aug. 11, 2014 Letter Reply in Further Supp. of Mot. for Leave to File Under Seal (Dkt. 32). Plaintiff however, requested leave to file the video footage under seal and to redact descriptions of the video from their papers, contending that the video recordings were governed by a protective

order limiting disclosure and the case was in its early stages so that sealing would not prejudice future disclosure. Pl.'s Aug. 11, 2014 Letter Mot. for Leave to File Under Seal.[1] The City Defendants opposed Plaintiff's request to submit the actual video, whether it was sealed or not. Defs.' Aug. 11, 2014 Letter in Opp. to Pl. Letter Mot. to Seal (Dkt. 31).

This Court granted Plaintiff's request to file the video under seal. *See* Aug. 12, 2014 Order (Dkt. 34). Because the video was relevant to an issue before the Court, the Court held that the video was a "judicial document" to which a "presumption of public access" attached. *Id.* at 2. Nevertheless, this Court found that the presumption of public access was overcome by competing considerations weighing against public disclosure: (1) the action was in the early stages of litigation; (2) the bifurcation dispute related "only to a matter of Court administration and not to a substantive legal dispute;" (3) the City had an interest in not having the video publicly available as the investigation by the New York City's Department of Investigation ("DOI") was on-going; and (4) there were privacy concerns for non-parties who may be identified in the video. *Id.* The Court ultimately denied the City Defendants' motion to bifurcate discovery based, in part, on a finding that the video recording went "well beyond demonstrating that a constitutional violation is 'plausible'" so that Plaintiff, more likely than not, would be entitled to *Monell* discovery. Aug. 22, 2014 Order (Dkt. 45).

The parties have since reached a settlement agreement in principle, pending the completion of Plaintiff's guardianship proceedings in New Jersey. *See, e.g.*, Pl.'s Apr. 20, 2015 Letter (Dkt. 103); Pl.'s Aug. 3, 2015 Letter (Dkt. 104). On April 13, 2016, Mr. Hattem made his request to unseal the video footage.

---

[1] Plaintiff acknowledged, however, that eventual disclosure of the videos might be required pursuant to *Lugosch v. Pyramid Co. of Onandaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

## DISCUSSION

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie Cnty., N.Y.*, 763 F.3d 235, 238-39 (2d Cir. 2014). "The presumption of access is based on the need for federal courts, although independent -- indeed, particularly because they are independent -- to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*"). "The common law right of public access to judicial documents is said to predate the Constitution." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). By now it is "well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014).

In applying these principles to determine whether sealing is appropriate in a particular case, courts conduct an inquiry that has several stages. First, courts inquire whether the document is a "judicial document" to which a presumption of access would attach. *See Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 167 & n.15 (2d Cir. 2013). If it is, courts ask whether the presumption of access is the common law right of access or the more robust "'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). If the Court determines that the documents at issue "are subject to a First Amendment right of access," it then looks only to whether it can make "'specific, on-the-record findings that higher values necessitate a narrowly tailored sealing.'" *Erie Cnty.*, 763 F.3d at 241, 243 (quoting *Lugosch*, 435 F.3d at 126). On the other hand, when courts determine that the common law presumption of access attaches, they "determine the weight of the presumption and measure it

against competing considerations." *Id.* at 241; *see also Amodeo II*, 71 F.3d at 1048-53.  In any case in which some sealing of a judicial document is appropriate, the Second Circuit has directed that the Court should determine whether partial redaction of the private material is "a viable remedy," or whether the document presents "an all or nothing matter." *Amodeo II*, 71 F.3d at 1053; *see also IDT Corp. v. eBay*, 709 F.3d 1220, 1224 (8th Cir. 2013).

### I. The Video Footage is A Judicial Record Entitled to a Presumption of Access

When determining whether filings are judicial records entitled to a presumption of access, "[t]he focus of [courts'] analysis is on whether the [filings] are 'relevant to the performance of the judicial function and useful in the judicial process.'" *Erie Cnty.*, 763 F.3d at 240 (quoting *Lugosch*, 435 F.3d at 119).  Documents that are attendant to the undisputed presumption of a public right to attend both civil and criminal proceedings are "judicial documents." *Hartford Courant*, 380 F.3d at 93; *see also Pub. Citizen*, 749 F.3d at 268.  Courts "evaluate the 'relevance of the document's specific contents to the nature of the proceeding' and the degree to which 'access to the [document] would materially assist the public in understanding the issues before the . . . court, and in evaluating the fairness and integrity of the court's proceedings.'" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139-40 (2d Cir. 2016) (quoting *Newsday*, 730 F.3d at 166-67) (alteration and omission in *Bernstein*). Because describing a document as a "judicial document" carries legal significance, "the category of 'judicial documents' should not be readily expanded. The fact that a document is relevant to the subject matter of a judicial proceeding, or that the proceeding was in some way stimulated by the document, does not make it public." *Newsday*, 730 F.3d at 167 n.15.

This Court has already held that the video recordings are judicial documents to which the presumption of access attached.  *See* Aug. 12, 2014 Order (Dkt. 34).  Neither party argues that the Court should reconsider that previous finding, and this Court finds no reason to do so.  The

video footage was filed in support of Plaintiff's opposition to Defendants' motion to bifurcate discovery.  The footage was not simply relevant to the subject matter of the proceeding but was explicitly relied on by the Court to deny Defendants' Motion to Bifurcate.  Aug. 22, 2014 Order at 2; *see Amodeo II*, 71 F.3d at 1050 ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and stand on a different footing than a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions." (internal quotation marks, citation, and alteration omitted)).  Accordingly, the videos are judicial documents subject to a presumption of access.

## II. The Video Footage Falls under the Common Law Presumption of Access But Not the First Amendment Presumption of Access

The next step in ascertaining whether the footage should remain sealed is to determine whether the presumption of access is secured by the First Amendment or common law.  The analysis is different with respect to each—"'the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment.'" *Lugosch*, 435 F.3d at 124 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)) (alteration omitted).

### A. The First Amendment Presumption of Access Does Not Attach to the Video Footage

The Second Circuit has articulated two different approaches for evaluating whether "'the public and the press should receive First Amendment protection in their attempts to access certain judicial documents.'"  *Bernstein*, 814 F.3d at 141 (quoting *Lugosch*, 435 F.3d at 120).  The first approach looks to "experience and logic," asking "'whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question."  *Id.* at 141

(quoting *Lugosch*, 435 F.3d at 120). "'The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.* (quoting *Lugosch*, 435 F.3d at 120).

The first approach supports the conclusion that the First Amendment presumption of access does not attach to the video footage. Experience cautions against public access. Video footage from surveillance of a psychiatric ward is certainly not a record that is historically open to the press and general public. Logical considerations also do not support public access. Public access to the video footage would not play a significant positive role in resolution of discovery disputes. And Mr. Hattem raises no concerns related to the functioning of that particular process. Instead, Mr. Hattem argues that release of the video footage is "crucial to a full public understanding" of why certain investigative agencies with access to the videos did not indict Defendant Rodrigues until more than two years after the alleged attacks. Request to Unseal. Mr. Hattem may be raising an issue of legitimate public concern, but his request to this Court to unseal the tapes is misdirected. The proceeding before this court was a motion for bifurcation of discovery. That motion was related to the Court's administration and management of the case; it did not relate to the parties' substantive legal rights nor to the decision-making of any prosecutorial office. Mr. Hattem offers no convincing reason, and this Court cannot find one, why Buzzfeed would enjoy a First Amendment right of access to filings from that early, non-substantive stage of the case.

### B. The Common Law Presumption of Access Attaches to the Video Footage But a Balancing Analysis Supports Continuation of the Sealing Order

"'Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption.'" *Bernstein*, 814 F.3d at 142 (quoting *Lugosch*, 435 F.3d at 119).

### 1. The Weight of the Presumption of Access is Minimal

"[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II*, 71 F.3d at 1049. "[W]here documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches." *Lugosch*, 435 F.3d at 121 (citing *Amodeo II*, 71 F.3d at 1049). When a court evaluates submissions and renders a decision that does not meaningfully affect the parties' substantive rights "the public interest in access 'is not as pressing.'" *Amodeo II*, 71 F.3d at 1049 (quoting *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1342 n.3 (D.C. Cir. 1985) (Wright, J., concurring in part and dissenting in part)). Such documents fall into "the middle of the continuum . . . [thus] the weight to be accorded to the presumption of access must be determined by the exercise of judgment . . . . Where such documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id.* at 1049-50. Finally, when a document plays "only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access." *Id.* at 1050.

Defendant Rodrigues correctly argues that the video footage is subject to a minimal presumption of public access. The Court relied on the footage to deny bifurcation of discovery, a decision which this Court acknowledged was "relate[d] only to a matter of Court administration and not to a substantive legal dispute." Aug. 12, 2014 Order at 2. That decision was not dispositive of the case, determinative of the litigants' substantive rights, or at the heart of the exercise of Article III powers. Accordingly, the weight of the presumption of access, while not at the absolute bottom of the continuum, is very close to the bottom.

### 2. There Are Compelling Privacy Interests That Favor Sealing

"Once the weight of the presumption is determined, a court must balance competing considerations against it." *Amodeo II*, 71 F.3d at 1050. The crux of the weight-of-the-presumption analysis balances the value of public disclosure against "countervailing factors," such as the danger of impairing law enforcement or judicial efficiency, and privacy interests. *Bernstein*, 814 F.3d at 143. "[T]he privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure . . . should weigh heavily in a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted." *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987). "Such interests, while not always fitting comfortably under the rubric 'privacy,' are a venerable common law exception to the presumption of access." *Amodeo II*, 71 F. 3d at 1051.

> In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public.

*Id.* "The nature and degree of injury must also be weighed." *Id.* Finally, in balancing the qualified right of public access against privacy interests, the Court must consider "the sensitivity of the information and the subject," "the reliability of the information," and whether "there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.*

Here, there are privacy interests that favor continued sealing of the video. This Court previously found that the public release of the videos would implicate "the privacy concerns of non-parties who may be identified in the video," Aug. 12, 2014 Order at 2, and sees no reason to change course. The video footage shows the interior of a prison ward at a mental hospital and would risk involuntarily exposing the identities of persons who suffer from mental disorders,

some of whom might be mentally incompetent. Medical information, including information relating to mental illness or treatment in a psychiatric ward, is a sensitive subject matter that is traditionally considered private. *See Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 629 (S.D.N.Y. 2011) (concluding that "most of the cases in which courts have concluded that the privacy interests of individuals were sufficient to overcome the presumption of access involve illness or sensitive personal financial information."); *United States v. Sattar*, 471 F. Supp. 2d 380, 387 (S.D.N.Y. 2006) ("[T]here is a recognized privacy interest in medical records, although that privacy right is neither fundamental nor absolute."); *see also United States v. Kravetz*, 706 F.3d 47, 63 (1st Cir. 2013) ("Medical information is . . . universally presumed to be private, not public." (internal quotation marks omitted)). Moreover, if the video were released or shown to the public, the injury to those non-party patients could be particularly acute, especially when there is a risk that some may be mentally incompetent and have not been given the opportunity to object to the disclosure.[2]

## CONCLUSION

For the foregoing reasons, Mr. Hattem's Request to Unseal is DENIED. Defendant Rodrigues' Motion to Continue the Sealing Order is GRANTED, without prejudice to Plaintiffs' ability to challenge the sealing order at a later date. The Clerk of Court is respectfully directed to

---

[2] Mr. Hattem suggests that, if any non-parties appear in the footage, their faces could be obscured before the footage is unsealed, thereby resolving any privacy concerns. The Court, however, disagrees that such redaction would entirely obviate the privacy concerns. There would still be the risk that a patient could be identified based on other features of the person. Accordingly, even with redaction, the privacy concerns at issue here would still outweigh the minimal presumption of access that attaches to the footage.

Defendant Rodrigues argues that the Court ordered the production of the video subject to a protective order, and there is a strong presumption against modification of a protective order, particularly in the absence of any material change in circumstances. Mot. to Continue Seal, at 2. Defendant Rodrigues also maintains that disclosure of the video footage would compromise his fair trial rights in a related criminal case in New York State Supreme Court, *People v. Rodrigues*, Case No. 00684-2016 (N.Y. Crim. Term Mar. 23, 2016). *Id.* at 3. Because the privacy interests of non-parties outweigh the minimal common law presumption of access, it is not necessary for the Court to take a position on either argument advanced by Rodrigues.

close Docket Entry 123 and to email a copy of this opinion and order to Mr. Hattem at

ben.hattem@gmail.com.

**SO ORDERED.**

**Date:  June 9, 2016**
       **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

11